James D. MORTON, Jr., Petitioner,

v.

James E. DOW, Acting Administrator, Federal Aviation Administration, and National Transportation Safety Board, Respondents.

No. 75–1088.

United States Court of Appeals, Tenth Circuit.

Argued May 22, 1975.

Decided Sept. 8, 1975.

Rehearing Denied Oct. 21, 1975.

---

L. B. Ullstrom, Denver, Colo., for petitioner.

Karen K. Siegel, Atty., App. Section, Civ. Div., Dept. of Justice (Rex E. Lee, Asst. Atty. Gen., and Robert E. Kopp, Atty., App. Section, Civ. Div., Dept. of Justice, on the brief), for respondents.

Before MURRAH, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a review of a decision of the Federal Aviation Administrator revoking the petitioner Morton's airworthiness certificate for what purported to be a rebuilt Bell Helicopter, Model 205A–1. This review is pursuant to 49 U.S.C. §§ 1429 and 1486.

An aircraft belonging to Arizona Helicopters, Inc. crashed and was totally destroyed on August 14, 1972. Little was salvaged except the log book and the identification plate. These, however, were used to build a new helicopter, and for the obtaining of a new registration number. This latter was changed from N2236W to N6208N.

Meanwhile, on August 23, 1973, Arizona Helicopters had conveyed the salvage together with the new number to petitioner. It was Morton who constructed the new aircraft and affixed the log book and identification plate of the destroyed one.

Based on a previous airworthiness certificate, Morton contacted an FAA employee and showed him a copy of the 1969 airworthiness certificate together with the change in registration number. He represented that he had lost his original airworthiness certificate and asked the employee to issue him a replacement. All of this was without mentioning that the helicopter bearing No. N2236W had been destroyed. The employee, who had known Morton previously, issued the replacement certificate without further ado.

After it had been in service for two months, Bell Helicopters learned of it and made a complaint to FAA. The FAA in turn on February 28, 1974, issued an emergency order of revocation of the airworthiness certificate for the aircraft. As a result, Morton was unable to fly the helicopter from that time on.

In March 1974, notice of appeal was filed to the National Transportation Safety Board seeking review of the revocation order. Morton waived the emergency procedures in order to serve personal convenience. Thereupon, the Administrative Law Judge denied motions for discovery and clarification of the emergency order. The matter came to trial on November 18, 1974, and at the conclusion of that trial, on November 22, 1974, the Administrative Law Judge issued an oral decision affirming the emergency order. His decision was appealed to the National Transportation Safety Board, and on March 27, 1975, the Board affirmed the emergency order.

The action of the FAA, the Administrative Law Judge and the National Transportation Safety Board did not proceed on the basis that a deception had been perpetrated on the FAA in order to get that body to issue a replacement airworthiness certificate. Why, we do not

know. It would seem simple to so proceed. One would suppose that implicit in an application of this sort would be that the aircraft is the identical one which had been originally certificated. Once it became apparent that it was not, it would seem that the action taken on the false assumption could be easily undone as void or at least voidable. There is no need, however, to clear up this mystery because the government agency continued the fiction by the simple expedient of ruling that the aircraft for which an airworthiness certificate had been issued did not comply with the type certificate for a Bell Helicopter Model 205A–1.

## I.

49 U.S.C. § 1423 vests in the Administrator of the FAA power to issue type certificates for aircraft. This certificate pertains to the design of the aircraft and once a general design is type certificated, all other craft built according to that design are entitled to type certificates. An applicant can obtain a type certificate if the aircraft design complies with the airworthiness requirements of 14 C.F.R. Parts 23–35 and a test shows that it is safe. The type certificate includes the design, the operating limitations, the certified data sheet and the FAA regulations. These are effective until suspended, revoked or otherwise terminated, and are freely transferable provided notice is given to the FAA. 14 C.F.R. § 21.47. Some modifications to an aircraft compel the issuance of a new type certificate. Other "major changes" require only a supplemental type certificate. 14 C.F.R. §§ 21.113–21.119.

As noted, the Administrator's determination that the craft conforms to its type certificate, plus his determination that the aircraft is in a safe condition entitles it to an airworthiness certificate. 49 U.S.C. § 1423(c). A new aircraft is, of course, entitled to the type certificate without exception. 14 C.F.R. § 21.83, but other aircraft are not entitled to an airworthiness certificate unless the owner presents evidence as set forth in the regulations. See 14 C.F.R. § 21.181(1). Once issued, however, the airworthiness certificate continues as long as maintenance, preventive maintenance and alterations are performed in accordance with the regulations. 14 C.F.R. § 21.181(1). An airworthiness certificate is transferred with the craft. 14 C.F.R. § 21.179.

Morton's contentions are:

First, that the procedures that we have outlined violate his constitutional rights—deprive him of due process of law and are contrary to the Administrative Procedure Act;

Second, that at the trial the complaint was insufficient, the evidence was irrelevant and was also insufficient to support the findings;

Third, that the Administrator was estopped to revoke his airworthiness certificate;

Fourth, that the Administrative Law Judge was obligated to furnish an opportunity to eliminate the non-conformance of the helicopter with the type certificate.

■ We have considered the various aspects of the due process arguments and conclude that they are wholly without merit. We see nothing invalid in the authority given in 49 U.S.C. § 1429 to the Administrator to revoke an airworthiness certificate in an emergency and without a hearing. Thus, it has been held that agencies can take emergency action where danger to the public is present.[1] Inherent in an aircraft is dan-

1. See FTC v. Dean Foods Co., 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966) (FTC may seek injunction against a merger pending administrative hearings); Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (drug with misleading labels may be seized pending a hearing); Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947) (conservator may take possession of failing bank prior to hearing); North American Cold Storage Co. v. City of Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (food unfit for human consumption may be summarily seized and destroyed); 1 K. Davis, Administrative Law Treatise § 7.08 (1958).

ger if it does not meet prescribed standards. This helicopter, though purporting to be a Bell 205A–1, was not such an aircraft. We are not able to say that the Administrator did not have sufficient grounds to summarily suspend the certificate. To be sure, the burden on Morton was substantial, but when placed on the scale opposite the possibility of grave harm to the public, the latter prevails. It seems to us that Morton took this risk when he built the aircraft and represented it as a Bell 205A–1, presumably in order to escape inspection. Thus, the emergency order was no surprise. Indeed, he had been given notice by letter dated December 10, 1974, and the order was issued on February 28, 1974.

■ The validity of § 1429 has been upheld. *See Air East, Inc. v. National Transportation Safety Bd.,* 512 F.2d 1227 (3rd Cir. 1975). In holding that the emergency order was justified, the court recognized that the FAA should not wait until there has been a fatal crash. It is sufficient here that the craft does not meet the airworthiness criteria of the statute and regulations.[2]

■ Nor do we see merit in Morton's contention that he was entitled to a hearing and determination of the validity of the Administrator's findings that an emergency existed. He had hoped to have the order suspended so that he could use the aircraft during the hearing process. It was held by the Administrative Law Judge that the Board lacked authority to investigate the validity of the determination that an emergency existed; that it was limited to determining the sufficiency of the evidence to support revocation of the airworthiness certificate.

Congress recognized that the decision must be determined quickly by persons with expertise in aviation matters. Thus, it did not regard this as the kind of case in which judicial review should follow since the reviewing authority would have little knowledge of the subject matter in any event. On the other hand, a certificate holder is entitled under the law to have the Board review the emergency orders within 60 days. This is adequate due process.

■ We have also considered his additional due process argument that § 1429's provisions regarding the hearing on the merits do not give enough time. We see no unfairness in this in view of the emergency character of the proceedings. Nor do we see merit in his further contention that he was not furnished the design plans for the Bell Helicopter Model 205A–1 until just prior to the hearing. We see no violation of either the Freedom of Information Act or the Due Process Clause, particularly in view of the fact that Morton was in essence offered a continuance by the Administrative Law Judge. This he declined.

## II.

## THE HEARING

■ In asserting that the conduct of the hearing was unlawful, Morton contends that the Administrator's complaint (the emergency order) did not state a claim for relief in that it did not allege violation of a specific statute or regulation and because it failed to incorporate by reference the language of nonconformity. The complaint did, however, specify the statute that gave it authority to issue an emergency order revoking the airworthiness certificate. It also spelled out in intricate detail the specific

---

2. Morton cites *United States v. Harper,* 335 F.Supp. 904 (D.Mass.), vac. and dismissed as moot, 406 U.S. 940, 92 S.Ct. 2041, 32 L.Ed.2d 328 (1972), as authority for the proposition that the emergency revocation procedures of § 1429 are unconstitutional. However, in that case the district court held that the statute was unconstitutional only insofar as it purported

"to authorize a permanent revocation of a certificate without giving the holder an opportunity to be heard . . ." Id. at 906. In the present case Morton was given an opportunity to be heard prior to the permanent revocation of his certificate. Indeed, had Morton so elected, the hearing could have been as few as 60 days after the issuance of the emergency order.

discrepancies between Mr. Morton's craft and the design specifications for a Bell Helicopter Model 205A–1. It is not material that the complaint did not incorporate by reference the Bell design plans. Mr. Morton had sufficient notice of the charges against his craft.

█ Nor do we agree with the argument that the Administrative Law Judge's evidentiary rulings were erroneous. Most of Morton's contentions go to admissibility of evidence because of lack of relevance or lack of official verification. We must be mindful that agencies are not bound by the strict rules of evidence governing jury trials.[3] None of the instances cited are of constitutional or even substantial proportions.

█ As to Morton's contention that the Administrative Law Judge failed to make sufficient findings of fact and conclusions of law, the Board dealt with this contention in its opinion and order when it stated:

> Although not a model of clarity, the initial decision does, in our view, make the necessary findings on the ultimate issue of conformity and indicates the reasoning, and supportive evidence, underlying the finding. We are also mindful that the law judge's decision must be read in the context of the entire proceeding, in which context the decision stands as a reasonably complete and understandable statement.

### III.

██ As to the assertion that the Administrative Law Judge and the Board erred in deciding that his airworthiness certificate should be revoked: Although Mr. Morton had made some conforming changes in his helicopter between the time he received the complaint and the time of the hearing, it cannot be disputed that his craft did not conform to the design for a Bell Model 205A–1 helicopter which is incorporated by reference into his type certificate. By statute a craft is entitled to an airworthiness certificate only if it conforms to its type certificate. Thus, even ignoring the deviousness of Morton's attempt to procure a replacement airworthiness certificate for a helicopter that had been destroyed, there was substantial basis under the statute for revoking the airworthiness certificate. The argument that if a craft "is in condition for safe operation" it is entitled to an airworthiness certificate, even if it does not conform to its type certificate, is not in accord with the statute which states that a craft must be in a condition for safe operation *and* conform to its type certificate. 49 U.S.C. § 1423. Since Mr. Morton's craft did not conform to its type certificate, it was not entitled to an airworthiness certificate.

█ Mr. Morton also contends that the Administrator ought to be estopped from revoking the airworthiness certificate because its agents had observed him building the helicopter. He further contends that the Administrative Law Judge and the Administrator should have given him time to conform to the type certificate prior to revoking his airworthiness certificate under 5 U.S.C. § 558(c)(2). Both of these contentions lack merit.

The judgment and order is affirmed.[4]

---

3. *See FTC v. Cement Institute,* 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948); *NLRB v. Donnelly Garment Co.,* 330 U.S. 219, 67 S.Ct. 756, 91 L.Ed. 854 (1947); *Wallace Corporation v. NLRB,* 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216 (1944); 2 K. Davis, Administrative Law Treatise § 14.01 (1958).

4. We note that the Board expressed its desire that the Administrator's representatives work with Morton in making modifications necessary for conformance with the type certificate and so as to bring about airworthiness. That of course, is up to the Administrator's representatives. Certainly they should not refrain from helping this individual if the aircraft becomes truly airworthy. While his conduct seeking to make this aircraft appear to be a standard Bell Helicopter Model 205A–1 is offensive, he should not be punished for life if the craft is in truth airworthy.