**George O. GRANT, Petitioner,**

v.

**NATIONAL TRANSPORTATION SAFETY BOARD, Federal Aviation Administration, Respondents.**

**No. 91–70095.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 23, 1991.

Decided March 30, 1992.

R.N. Sutliff, Anchorage, Alaska, for petitioner.

Harry S. Gold, Office of the Chief Council, Federal Aviation Admin., Washington, D.C., for respondents.

Before TANG, REINHARDT and RYMER, Circuit Judges.

REINHARDT, Circuit Judge:

In cases of emergency, the Federal Aviation Act, 49 U.S.C.App. § 1429(a) gives the Federal Aviation Administration (FAA) the power to suspend or revoke an airman mechanic's certificate prior to any hearing on the matter. The certificate holder is entitled to appeal the order of suspension or revocation to the National Transportation Safety Board (NTSB), and the filing of an appeal will ordinarily stay the operation of the order. The FAA is empowered, however, to prevent this stay and thereby effect the immediate revocation or suspension of a certificate by "advis[ing] the National Transportation Safety Board that an emergency exists and safety ... requires

the immediate effectiveness of [its] order." Congress sought to limit the duration of such pre-hearing orders by directing that in emergency proceedings "the National Transportation Safety Board shall finally dispose of the appeal within sixty days after being so advised by the [FAA]." Thus, although a certificate holder may, in certain types of cases, be deprived of his right to do business by the FAA pending final review by the NTSB, the period of time within which final review must be conducted is limited by statute. The issue before us is a narrow one, as well as one of first impression—whether in an emergency proceeding, if the NTSB fails to comply with the special time limits applicable to such proceedings, the certificate holder's rights may nevertheless be forfeited simply because *he* failed to comply with the time limits which controlled the filing of his appeal.

The facts of the case are relatively simple. The petitioner, George Grant, operates an aviation repair business in Alaska. On August 23, 1990, the FAA issued an emergency revocation of his airman mechanic's certificate. Because the petitioner's license had been ordered revoked forthwith, the FAA order stated that "[y]ou may appeal from this emergency order within ten (10) days from the time of its service upon you by filing the original and four (4) copies of your notice of appeal with the National Transportation Safety Board." *See* 49 C.F.R. § 821.55(a). By contrast, in an ordinary non-emergency case the certificate holder has 20 days within which to file an appeal.

There is some controversy over when the ten day period applicable to emergency revocations began to run in Grant's case. The order was sent to Grant's place of business by certified mail on August 23. Grant testified that the employee who signed for the letter was not authorized to do so and that he did not learn of the order until September 18, when an FAA inspector hand-delivered a copy to him. The administrative law judge (ALJ), who considered the case once Grant filed a notice of appeal, agreed with Grant (a finding with which the NTSB did not disagree) and tabulated the delay in filing from September 18. In any case, due to difficulty in contacting his attorney, Grant's notice of appeal was not filed in a timely fashion—not until October 1, thirteen days after he was personally served with the emergency order. If the FAA's order would have been of an ordinary, non-emergency nature, Grant's notice of appeal thus would have been timely.

On October 10, the FAA responded to Grant's petition and notified the NTSB of the emergency order.[1] The matter was referred to an ALJ, who allowed Grant's untimely appeal because he found that good cause had been shown. A hearing on the merits before a new ALJ then took place on November 16. In that decision, the ALJ reaffirmed his predecessor's decision to allow Grant to appeal. He found that Grant had not received the earlier order sent by certified mail so that the time to appeal began to run on September 18, when Grant was personally served. The ALJ also found that Grant had good cause for his failure to timely file and so went on to consider the merits of the appeal. He then concluded that the FAA's order should be dismissed because the FAA had failed to demonstrate that the regulation it alleged Grant had violated was in fact applicable to him.

The FAA appealed to the NTSB. On December 14—65 days after it was notified by the FAA of the emergency order, and five days after the statutory period had expired—the board reversed the ALJ.[2]

---

[1] Grant does not challenge the timeliness of the FAA's initial response. *Cf.* 49 C.F.R. §§ 821.-54(b) (stating that the sixty days within which the NTSB must review an emergency revocation order commences on the day when the FAA gives written notice of the emergency character of its order), 821.55(c) (providing that within three days after receipt of petitioner's appeal to the Board, the FAA shall file the emergency order as its complaint).

[2] Under 49 C.F.R. § 821.54(b), the sixty day period begins to run when the FAA responds to the petitioner's notice of appeal. It is possible to read 49 U.S.C.App. § 1486 as mandating that a final board decision be rendered at an earlier time—within sixty days of issuance of the emer-

Without acknowledging its own untimeliness, it held that Grant's notice of appeal of the emergency order was untimely, and therefore dismissed his appeal without reaching the merits of the order. As a result, the revocation of Grant's license became final. Pursuant to 49 U.S.C.App. § 1486, Grant petitions this court for review of the NTSB decision.

It is undisputed that the NTSB failed to comply with the congressional mandate that it issue its final decision within 60 days of notification of an emergency order. What is disputed by the parties is the practical consequences of the board's violation. Petitioner urges us to adopt the rule that if the NTSB fails to act within 60 days, the ALJ's decision becomes final. This we decline to do. Although the 60 day time limit is enacted for the benefit of the certificate holder, *see Air East, Inc. v. NTSB*, 512 F.2d 1227, 1231 n. 8 (3d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975), the predominant purpose of § 1429 is to promote the public's interest in air safety, *see Barnum v. NTSB*, 595 F.2d 869, 872 (D.C.Cir.1979). Adopting the petitioner's suggestion and reinstating certificates prior to final determinations by the NTSB would give insufficient weight to the public's interest. The fact that an ALJ found in favor of the certificate holder is not an adequate guarantee, under the statute, that the FAA's concern for the public safety was unwarranted. That is why the statute permits an emergency revocation to remain effective pending final NTSB action *regardless of the ALJ's initial determination.* The NTSB's dilatory conduct does not alter the risk to the public of returning a certificate prior to a final board decision. Accordingly, we hold that a failure of the NTSB to act within 60 days does not deprive it of the power to review the ALJ's

decision on the merits. *See McCarthney v. Busey,* 954 F.2d 1147, 1152 (6th Cir.1992).

We do not hold, however, that the NTSB's failure to comply with the statutory time limit is always without consequence. We have previously concluded that the short duration of emergency revocations is an important aspect of the statute's constitutionality. *See Nevada Airlines, Inc. v. Bond,* 622 F.2d 1017, 1019–20 (9th Cir.1980); *see also Air East,* 512 F.2d at 1231. Our willingness to permit the suspension of important rights prior to a hearing is based on the assumption that the government will comply with the statutory provisions. For that reason, we cannot now say that the time limit imposed by the statute is wholly precatory. Instead, we must construe the statute in a manner that will encourage the government to comply with its terms. At the same time, we must seek to vindicate the certificate holder's right to a fair and orderly decision without impairing the FAA's mandate to promote the public safety.

Here, there is a consequence that both fits the board's failure to act in a timely fashion and is consistent with the statutory purpose. In reversing the ALJ, the board did not exercise its power to examine the ALJ's decision on the merits, but only reviewed the ALJ's determination that good cause existed for Grant's delay in filing his notice of appeal. We will assume *arguendo* that the board has the power to reverse an ALJ's determination that good cause exists, when it acts in a timely fashion.[3] However, when it acts in an *untimely* fashion, it would be unduly harsh to permit it to forfeit a petitioner's right to an appeal for acting similarly. A fairer and more orderly approach would be to preclude the application of the special time limits to petitioners in such cases. That is the remedy we now approve. It serves the prophy-

---

gency order. *See Nevada Airlines, Inc. v. Bond,* 622 F.2d 1017, 1019–20 (9th Cir.1980). However, we will assume that § 821.54(b) of the regulations is lawful as the petitioner does not raise the issue. In any event, we note that any delay on the part of the licensee postpones the date by which the board must render its final decision and so prejudices the *licensee,* not the agency.

3. The petitioner has argued that 49 C.F.R. § 821.11 deprives the NTSB of the power to reverse an ALJ finding of good cause for delay. Because of our disposition of the petitioner's appeal, we need not reach this issue.

lactic purpose of encouraging agency compliance with the 60 day time limit, but in no way implicates the public's interest in air safety or hinders the FAA in the exercise of its function. In cases like Grant's, the FAA is not prejudiced by the delay in petitioner's filing of his appeal—indeed, under 49 C.F.R. § 821.54(b), the delay extends the FAA's time in which to prepare for an appeal and thus benefits that agency. *See* note 2 *supra.* The only practical consequence of our holding is that the NTSB is required to consider the merits of a case—a case appealed within the ordinary 20–day time limits. That is a result which is wholly consistent with all the purposes of the Act. *Cf. Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 373, 86 S.Ct. 845, 851, 15 L.Ed.2d 807 (1966) ("If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits.").

There is an additional argument in favor of the result we reach. It may be argued that a licensee in Grant's position can waive the expedited review requirements of the emergency procedures and instead seek review under the ordinary non-emergency procedures if he desires more time to prepare his defense than is afforded under the emergency procedures. It can further be argued that he can do so simply by filing within the normal 20 day period rather than within the 10 days allowed under the special rules. Under the ALJ's findings— findings that were not upset by the board—Grant's appeal was filed less than twenty days after receipt of the FAA's order and therefore within the period provided by 49 C.F.R. § 821.30(a) for filing appeals of non-emergency orders. Although a number of filing dates are shortened, the principal difference between emergency and non-emergency appeals is that the rules governing the former require the board to issue a final determination within 60 days—a limit that, as we noted

above, was enacted for the benefit of the licensee. Thus, the consequence of a waiver by the petitioner of the emergency procedures would be to enlarge beyond the statutory period the time during which the emergency revocation of a license may remain in effect. Such an enlargement of the emergency revocation period is, of course, exactly what occurred as a result of the board's delay in this case. The emergency revocation lasted 65 days after the board was notified of the FAA's action rather than the statutory sixty. However, we need not decide whether Grant could waive the special emergency time limits— and if so, whether he did—since we conclude that because of the board's own lack of compliance with those procedures, it may not hold him to them. Because the actions of the board denied Grant the benefit of the emergency rules, it would be unfair to require him to comply with the shortened filing requirements. Instead, having treated his appeal in a non-expedited fashion, the board may at most hold him to the non-emergency filing provisions— provisions with which Grant has complied. Accordingly, we find that the NTSB's conduct in delaying disposition of Grant's appeal until after the 60 day time period precludes it from reversing the ALJ on the ground of timeliness.[4]

As we have indicated above, the NTSB retains the power to decide the case on the merits. Although there is some authority for the proposition that, in the interim, Grant should be entitled to a stay on remand of the FAA's order, *see Bakersfield City School Dist. v. Boyer,* 610 F.2d 621, 625–26 (9th Cir.1979) (holding that failure to meet the time limits of 42 U.S.C. § 2000d–5 does not deny the Secretary of Education the jurisdiction to consider a school district's compliance with federal law but does deny him the power to defer the district's receipt of federal funds prior to his final decision), we decline to order a stay. While such an order would have the beneficial effect of encouraging the NTSB

---

4. We note that our decision is not inconsistent with that of the Sixth Circuit in *McCarthney.* In *McCarthney,* the board's untimely decision denied the petitioner's appeal *on the merits.* The Sixth Circuit held, and we agree, that a decision upholding revocation on the merits may not be overturned simply because the board acted after the statutory period.

to decide the merits as quickly as possible, the impairment of the FAA's ability to protect the public safety would simply be too great. Thus, we find that a stay of the emergency order is not warranted by a failure of the NTSB to reach a final decision within the statutory time limit.

Instead, we find the appropriate course of action is to order the NTSB to consider Grant's case on the merits and reach a final decision within 60 days. Such an order, we believe, serves to vindicate the certificate holder's right to an expedited hearing to the degree now possible without in any way impairing the public's interest in air safety. The petitioner's license has been revoked for over a year and a half already; further delay would only add to the unfairness. Accordingly, the order of the NTSB dismissing the petitioner's appeal is vacated, the decision is reversed, and the case is remanded with instructions to render a final decision within 60 days.

VACATED, REVERSED, AND REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS DECISION. THE MANDATE SHALL ISSUE FORTHWITH.

RYMER, Circuit Judge, dissenting:

I agree with that part of Judge Reinhardt's opinion which holds that the failure of the NTSB to act within 60 days does not divest it of jurisdiction, but I disagree that the Board's failure to act in timely fashion has anything to do with the certificate holder's obligation to file a timely emergency appeal within the ten-day period provided for emergency appeals in 49 C.F.R. § 821.-55(a). Because I believe the ten-day limit is a clear requirement, I would affirm.

49 U.S.C.App. § 1429(a), which empowers the FAA to suspend or revoke an airman mechanic's certificate, contemplates both emergency and non-emergency revocations. The emergency rule provides:

*Time within which to appeal.* Within 10 days after the service of the Administrator's emergency order on the certificate holder, he may file an appeal therefrom to the Board.

49 C.F.R. § 821.55(a). Consistent with this regulation, the notice—captioned *"APPEAL"*—that was attached to the FAA's revocation order stated:

You may appeal from this emergency order within ten (10) days from the time of its service upon you by filing the original and four (4) copies of your Notice of Appeal with the National Transportation Safety Board, [address omitted]. IT IS IMPERATIVE THAT YOUR APPEAL STATE THAT YOU ARE APPEALING FROM AN *EMERGENCY* ORDER.

Grant argues that he misinterpreted § 821.55(a) to mean that he had a choice between appealing within 10 days on the emergency track or appealing within the 20 days allowed for non-emergency appeals,[1] thereby foregoing the benefits of expedited emergency procedures. That scheme might be a good idea, but it is not the scheme embodied in the regulations, which say nothing about a choice. The emergency procedures and the non-emergency procedures are two different tracks. Once a case is on the emergency track, the rules in subpart I control,[2] and the ten-day limit applies.[3]

Even if the regulation were not clear on its face, the Board's interpretation is rea-

---

**1.** The non-emergency rule provides:

*Appeal.* A certificate holder may file with the Board an appeal from an order of the Administrator ... revoking a certificate. Such appeal shall be filed with the Board within 20 days from the time of service of the order.... 49 C.F.R. § 821.30(a).

**2.** Subpart I of 49 C.F.R. ch. VIII, pt. 821 ("Rules of Practice in Air Safety Proceedings") sets out the rules applicable to emergency proceedings. Within subpart I, § 821.54(a) provides:

*Applicability.* These rules shall apply to any order issued by the Administrator as an emergency order, or any order issued by the Administrator not designated as an emergency order, which is later amended to be an emergency order, as provided in section 609 of the [Federal Aviation] Act, in cases where the respondent appeals or has appealed to the Board therefrom.

**3.** This is not to say the certificate holder may not, within that ten-day limit, apply for an extension of time. *See* 49 C.F.R. § 821.11.

sonable and is therefore entitled to deference. *Udall v. Tallman*, 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616 (1965) (Agency's "interpretation may not be the only one permitted by the language of the [rules], but it is quite clearly a reasonable interpretation; courts must therefore respect it."). In addition, the NTSB has previously rejected the interpretation that Grant urges, *see Administrator v. Myers*, N.T.S.B. Order No. EA–2405 (1986), and its current interpretation should be accorded "great weight" for that reason as well. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974).

Grant further argues that he was deprived of due process because the notice was incomplete and ambiguous, and failed to advise him that he would lose all right to contest the allegations unless he appealed within ten days. He suggests that the fact the notice says a person "may" appeal, instead of "must" appeal, within ten days means the ten-day limit may be adhered to or ignored at the certificate holder's discretion. In support, he contrasts the language of 49 C.F.R. § 821.30(a), which uses "shall" to describe the twenty-day period for non-emergency appeals.

The word "may" in § 821.55(a) cannot reasonably be interpreted to refer to the time limit or to render the limit permissive; otherwise, the time limit itself makes no sense. Either there is a time limit, or there isn't. Rather, "may" is simply a way of saying the certificate holder can appeal if he wants to. *See Goodman v. City Prod. Corp.*, 425 F.2d 702, 703 (6th Cir.1970) ("The permissive verb 'may' [in Civil Rights Act provision stating that 'a civil action may ... be brought' within thirty days] refers to the option of the aggrieved party to bring a lawsuit, not to a discretion in the Court to receive the case following the expiration of 30 days."). That the non-emergency rule provides that anyone who chooses to appeal "shall" appeal within 20

days is immaterial, because the construct of § 821.30(a) is different from that of § 821.55(a).[4] Nor is the notice deficient for failure to spell out the consequences of not filing an appeal within the ten-day period. "All citizens are presumptively charged with knowledge of the law," *Atkins v. Parker*, 472 U.S. 115, 130, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985), including in this case the provision that an extension of time to file any document, including the appeal, could be obtained only for good cause.

Grant does not dispute that the NTSB has the power of plenary review, but argues that it has limited its own power by permitting an ALJ to accept a late filing. There is no authority for such a constraint. The regulations provide that both an ALJ and the Board can make findings of good cause. 49 C.F.R. § 821.11. The Board's finding that Grant lacked good cause for missing the deadline should be upheld because it is subject to a substantial evidence standard, 49 U.S.C.App. § 1486(a), 5 U.S.C. § 706(2)(E), and there was substantial evidence to support it. The order had first been received by a Grant employee weeks before it was personally served on Grant; after he was personally served, Grant waited eight days to contact his lawyer; the FAA order contained an explicit statement on the filing of an appeal; and Grant himself testified that he read the FAA emergency order several times and understood it.

Thus Grant's appeal was untimely, and the Board's finding that good cause for an extension was lacking is well supported. Unless the Board's own default in rendering its decision within the 60 days prescribed by 49 U.S.C.App. § 1429(a) spills over to the timeliness of Grant's appeal under 49 C.F.R. § 821.55(a), the decision must be affirmed.

There is no precedent for penalizing an agency for its failure to comply with a time limit for decision by requiring it to hear an

---

**4.** Section 821.30(a) is broken into two sentences, the first of which states that a certificate holder "may" appeal from a revocation order. *See supra* n. 1. The word "may" in this section is used identically to the same word in § 821.-

55(a) and makes clear that "may" in § 821.55(a) simply refers to the certificate holder's option to pursue an appeal, not his option to choose the applicable time limit.

untimely appeal. Judge Reinhardt justifies this result because, when the Board "acts in an *untimely* fashion, it would be unduly harsh to permit it to forfeit a petitioner's right to an appeal for acting similarly." Although this may appear to be a fair tit for tat under the circumstances, in effect it amounts to an equitable estoppel against the government for which no authority exists in the absence of affirmative misconduct. *See, e.g., Bolt v. United States,* 944 F.2d 603, 609 (9th Cir.1991) ("[F]or the government to be estopped there must be affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government."); *Santiago v. INS,* 526 F.2d 488, 491 (9th Cir.1975) (en banc) ("[T]he rule of estoppel ... can only be invoked if the governmental conduct complained of amounts to 'affirmative misconduct.'") (quoting *INS v. Hibi,* 414 U.S. 5, 8, 94 S.Ct. 19, 21, 38 L.Ed.2d 7 (1973) (per curiam)), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976); *see also Heckler v. Community Health Serv.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984) ("[I]t is well settled that the Government may not be estopped on the same terms as any other litigant."); *cf. Office of Personnel Management v. Richmond,* 496 U.S. 414, 421–26, 432–34, 110 S.Ct. 2465, 2470–72, 2476, 110 L.Ed.2d 387 (1990) (holding that estoppel cannot be invoked in monetary claims against the government; declining to pass on desirability of "an across-the-board no-estoppel rule").

Judge Reinhardt's opinion further argues that as a practical matter what happened is exactly the same as if the certificate holder had waived the emergency procedures and sought review under the ordinary non-emergency procedures, thereby "enlarg[ing] beyond the statutory period the time during which the emergency revocation of a license may remain in effect." Perhaps, but there is no provision in the regulations for any such election; the certificate holder may request an extension if he wants more time to prepare his defense, but there is no provision for waiving the emergency time limits. Nor does it follow, as Judge Reinhardt's opinion holds, that

"[b]ecause the actions of the board denied Grant the benefit of the emergency rules, it would be unfair to require him to comply with the shortened filing requirements." Neither Grant nor any other certificate holder aggrieved by the Board's failure to render a decision within 60 days is without remedy. Under the Administrative Procedure Act, the certificate holder may petition a district court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

I therefore respectfully dissent.