**NATIONAL AIR TRANSPORTATION ASSOCIATION, Petitioner,**

v.

**Honorable T. Allan McARTOR, Administrator, Federal Aviation Administration, Respondent.**

No. 88–1038.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 12, 1988.

Decided Jan. 27, 1989.

---

Nathaniel H. Goodrich, with whom James M. McHale, Washington, D.C., was on the brief, for petitioner.

Vicki S. Leemon, Atty., Federal Aviation Admin., with whom James S. Dillman, Asst. Chief Counsel, Federal Aviation Admin., was on the brief, for respondent.

Before EDWARDS and WILLIAMS, Circuit Judges, and JOHN W. REYNOLDS *, Senior District Judge.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

The National Air Transportation Association ("NATA") here attacks rules issued by the Federal Aviation Administration on the subject of seat cushion "flammability." In form it challenges two rules, first, "Flammability Requirements for Aircraft Seat Cushions," 49 Fed.Reg. 43,188 (1984), and second, "Special Federal Aviation Regulation No. 52" ("SFAR–52"), 52 Fed.Reg. 45,-910 (November 26, 1987). All SFAR–52 did was to *extend* the deadline for petitioner's members (or some of them) to comply with the 1984 rule. Thus in substance petitioner challenges only the 1984 rule.

We find petitioner's claim time-barred. § 1006(a) of the Federal Aviation Act, 49

* Of the United States District Court for the Eastern District of Wisconsin, sitting by designation pursuant to 28 U.S.C. § 294(d).

U.S.C. App. § 1486(a) (1982), requires that suits seeking review of an FAA order (such as the one embodying the 1984 rule) must be filed within 60 days after entry of the order. Although we find that the notice on which the 1984 rule rests was inadequate and that the inadequacy tolled the 60–day limit, it did so only until the FAA provided adequate notice. This occurred no later than September 1986, when the agency released an Advisory Circular plainly indicating the application of the 1984 rule to the relevant aircraft. Petitioner filed suit only in January 1988.

## I. INADEQUACY OF THE ORIGINAL NOTICE

■ Appraising the notice requires a brief explanation of the complex web of categories into which the FAA has divided the aviation industry for purposes of safety regulation. Petitioner here represents firms operating what we may call, simplifying enormously, the largest of the small aircraft. "Small" aircraft, as we are using the term here, operate under 14 C.F.R. Part 135. They consist of (1) "air taxis" with 30 or fewer seats and a maximum payload capacity of less than 7,500 pounds, see 14 C.F.R. § 135.2(d), and (2) commercial aircraft with 19 or fewer seats and a maximum payload capacity of less than 6,000 pounds, see *id.* at § 135.1(a)(3).

But cutting into this class of small aircraft is a special class, "large aircraft," defined by 14 C.F.R. § 1.1 in completely different terms—aircraft of more than 12,-500 pounds maximum certified take-off weight. Where an aircraft is both "large" and "small" under these provisions, it not only "operates under Part 135," but is also required, through a cross-reference provision, § 135.169(a), to meet the airworthiness requirements of 14 C.F.R. §§ 121.213 through 121.283, 121.307 and 121.312. The last of these, § 121.312, addresses the issue of seat cushion safety.

In both the notice for the 1984 rule and in the rule itself, the bold-faced headings refer only to "Parts 25, 29 and 121" of 14 C.F.R. The "summary" paragraphs of each, appearing at the outset, refer to aircraft "certificated under Part 25 and Part 29" and to aircraft "operating under Part 121." See 48 Fed.Reg. 46,250 (October 11, 1983); 49 Fed.Reg. 43,188. Both the notice and the preamble of the ultimate rule make many other references to aircraft or carriers "operating [or "operated"] under Part 121." See 48 Fed.Reg. at 46,251, cols. 2 and 3; *id.* at 46,252, col. 2; *id.* at 46,257, col. 3; 49 Fed.Reg. at 43,188, col. 3; *id.* at 43,192, col. 2. It would seem unusual to say that a plane which operates under Part 135, but happens by virtue of § 135.169(a) to be subject to a handful of the sections of Part 121, "operates under Part 121." The FAA does not even argue that the aviation industry uses the phrase "operate under" so broadly.

As the proposed and final rules explicitly amended § 121.312, it is quite true that a thorough and alert reader would have been led to conclude that they affected large aircraft operating under Part 135. But the purpose of the bold-faced headings and the summary paragraphs is to function as guides—to enable the reader to decide whether he must slog through the whole thing or can turn his mind to other subjects. An agency may not put up signs inducing a set of readers to turn aside and then claim they had constructive notice of what they would have found at the end of the road. See *Forester v. Consumer Product Safety Comm'n*, 559 F.2d 774, 787 (D.C.Cir.1977) ("notice is sufficient if it affords interested parties a reasonable opportunity to participate in the rulemaking process"); see also *McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317, 1323 (D.C. Cir.1988) (to the same effect; summarizing cases finding notices defective).

■ But the defects of the 1983 notice do no more than toll the statutory time limit. Although statutory time limitations on judicial review of agency action are jurisdictional,

> self-evidently the calendar does not run until the agency has decided a question in a manner that reasonably puts aggrieved parties on notice of the rule's content.

*RCA Global Communications, Inc. v. FCC*, 758 F.2d 722, 730 (D.C.Cir.1985). See

also *Recreation Vehicle Industry Association v. EPA,* 653 F.2d 562, 568–69 (D.C.Cir. 1981) (time limit tolled until doubt as to applicability is eliminated). Here petitioner received notice no later than the FAA's issuance of its "Advisory Circular; Flammability Requirements for Aircraft Seat Cushions," issued September 17, 1986. See Addendum to Petitioner's Brief 34; see also 51 Fed.Reg. 43,261 (giving notice of a circular relating to flammability requirements for aircraft seat cushions and explaining how to secure a copy). The circular highlighted, as one of five related sections of the federal aviation regulations, "Section 135.169 of Part 135"—precisely the section that applies § 121.312 to large aircraft operating under Part 135. The circular also said:

> Amendments 25–59, 29–23, and 121–184 [collectively, the 1984 rule] were issued to require that new type design transport category airplanes and rotorcraft, as well as aircraft in air carrier operation under Part 121 and *large airplanes operated under Part 135,* be equipped with seat cushions providing a high degree of fire-resistance.

Addendum to Petitioner's Brief 34 (emphasis added). At oral argument petitioner's counsel conceded that NATA normally receives such circulars from the FAA, and in any event the Federal Register notice alerted aircraft operators generally to the risk. Yet NATA did not file the petition in this proceeding until January 1988, far more than 60 days after issuance of the circular. We thus hold that its petition for review of the 1984 Rule is untimely.[1]

## II. SURVIVING CLAIMS

■ *The actual scope of the 1984 rule.* NATA suggests offhandedly that one may infer from the inadequacies of the 1983 notice (and of the preamble of the 1984 rule) that the 1984 rule did not actually cover large aircraft operated under Part 135. See Petitioner's Brief at 4. If this were so, NATA's timely challenge to

SFAR–52 might get it somewhere, as that might be viewed as the first rule covering the relevant aircraft.

But there is no doubt that the 1984 rule amended 14 C.F.R. § 121.312. § 135.169 of course continued to make that provision applicable to Part 135 operators of large aircraft. Thus the 1984 rule did substantively change the seat cushion flammability rules for such planes.

Conceivably some language in the 1983 notice or the preamble could have broken that link. But we find nothing that does so. The parties direct our attention to a passage in the 1983 notice stating that

> The FAA is considering the need to propose similar flammability requirements for seat cushions in *small* airplanes and rotorcraft used in Part 135 operations. Regulatory action in this regard would be the subject of a separate notice.

48 Fed.Reg. at 46,251 (emphasis added). We think that in this context "small" refers to aircraft of 12,500 pounds certified takeoff weight or less, i.e., Part 135 aircraft that are not "large" aircraft. If it meant "small" in the sense of "small enough to be covered by Part 135," it would in context be redundant. Thus it strengthens rather than weakens our reading of the 1984 rule as covering "large" aircraft operated under Part 135.

*Challenge to SFAR–52.* NATA's petition for review of SFAR–52 is clearly timely. It was issued on November 26, 1987, and the petition for review in this case was filed on January 22, 1988. But once we recognize that the 1984 rule, however poorly noticed, covered "large" aircraft, an attack on SFAR–52 does petitioner no good. Its sole effect was to benefit Part 135 operators of large aircraft by extending the compliance date for this group from November 26, 1987 to February 24, 1988.

■ *Attacks on the 1984 rule that survive the 60-day time limit.* It is possible that NATA's attack falls within one of the

---

**1.** 49 U.S.C.App. § 1486(a) provides for some judicial discretion in allowing out-of-time petitions: "After the expiration of said sixty days a petition may be filed only by leave of court upon a showing of reasonable grounds for failure to file the petition therefore." In this case, NATA has presented no explanation for its inaction after the September 1986 circular.

exceptions to 49 U.S.C. App. § 1486(a)'s time limit, other than the exception for inadequate notice. In *NLRB Union v. FLRA*, 834 F.2d 191 (D.C.Cir.1987), this court reviewed the exceptions under a similar time limit; they provide petitioner no solace. *NLRB Union* allows, outside statutory time limits, substantive claims that the rule *"conflicts with the statute* from which its authority derives," 834 F.2d at 196 (emphasis in original), but petitioner makes no such claim. All but one of its claims are explicitly framed in terms of assertions that the rule is "arbitrary and capricious." The exception is a contention that the rule violates 49 U.S.C.App. § 1421(b), which requires the FAA to make "classifications ... appropriate to the differences between air transportation and other air commerce." Petitioner itself seems to read this as no more than a requirement that the FAA's classifications for regulatory purposes be reasonable, i.e., not arbitrary or capricious. While there are doubtless cases where it is hard to draw the line between "excess of statutory jurisdiction, authority or limitations," 5 U.S.C. § 706(1)(C), and arbitrary or capricious, see *id.* at § 706(1)(A), this is not among them. While *NLRB Union* would also allow some substantive review in the context either of agency *enforcement* of a rule against a violator, 834 F.2d at 195–96, or in the context of review of a petition to rescind or modify a rule, see *id.* at 196, the present facial challenge fits neither of those. Accordingly, the petition for review is

DENIED.