# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2719

_____

GoJet Airlines, LLC

*Petitioner*

v.

Federal Aviation Administration

*Respondent*

_____

Petition for Review of an Order of the
Federal Aviation Administration

_____

Submitted: September 24, 2013
Filed: March 4, 2014

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge

Mechanics replaced a brake assembly on the main landing gear of a CRJ-700 airplane operated by GoJet Airlines, LLC. They installed gear pins to lock the assembly in place during repairs, as the manufacturer's Aircraft Maintenance Manual instructed, but neglected to make an entry in the Flight Logbook that gear pins were installed and should be removed before flight, as GoJet's General Maintenance Manual required. One of the gear pins was not removed. Consequently, after takeoff

on the plane's next flight, a warning light alerted that the landing gear would not retract, and the pilots returned to the departure airport.

GoJet immediately disclosed the gear pin error to the Federal Aviation Administration ("FAA"), invoking the agency's Voluntary Disclosure Reporting Program ("VDRP"). Under the VDRP, the FAA will issue "a letter of correction in lieu of civil penalty action" if an air carrier voluntarily discloses regulatory violations and satisfies VDRP compliance requirements. One requirement is that the carrier develop and execute a "comprehensive fix," defined as "an action, or actions, proposed by the [air carrier] and accepted by the [FAA] to preclude recurrence of the apparent violation that has been voluntarily disclosed." FAA Order No. 8900.1 CHG 0, at ¶¶ 11-4(B)(1), 11-5 (Sept. 13, 2007); FAA Advisory Circular No. 00-58A, at ¶¶ 4(b)(1), 6 (Sept. 8, 2006).[1]

The FAA accepted the VDRP notification, GoJet submitted a proposed comprehensive fix, and FAA Inspector Gary Cooper rejected the proposal. When GoJet did not meet Cooper's deadline to propose an acceptable alternative, the FAA commenced this civil penalty enforcement action. Cooper and GoJet's chief inspector, Jeffrey Craig, testified at the administrative hearing. The FAA Acting Administrator ruled that GoJet violated FAA regulations when it failed to make the logbook entry and to remove the gear pin. GoJet petitions for judicial review, arguing it did not violate 14 C.F.R. §§ 91.13(a) and 121.153(a)(2) by carelessly or recklessly operating an unairworthy airplane, and procedural error. We have jurisdiction to review this final agency action. See 49 U.S.C. § 46110(a); 5 U.S.C. § 704.

_____

[1]These Orders have since been superseded by FAA Advisory Circular No. 00-58B (Apr. 29, 2009), available at http://rgl.faa.gov/Regulatory_and_Guidance_Library/rgAdvisoryCircular.nsf/list/AC%2000-58B/$FILE/AC%2000-58B.pdf; and by Order 8900.1, Vol. 11, Chap. 1, CHG 57 (June 7, 2011), available at http://fsims.faa.gov/PICDetail.aspx?docId=8900.1,Vol.11,Ch1,Sec1.

In reviewing the Administrator's decision, we accept as conclusive findings of fact that are supported by substantial evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." King v. NTSB, 362 F.3d 439, 444 (8th Cir. 2004); see 49 U.S.C. § 46110(c). We overturn nonfactual determinations only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Edwards v. FAA, 367 F.3d 764, 767 (8th Cir. 2004). Agency action is arbitrary and capricious when the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs contrary to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Rochling v. Dep't of Veterans Affairs, 725 F.3d 927, 937 (8th Cir. 2013). Applying this deferential standard, we deny the petition for review.

## I.

GoJet first argues that it did not commit violations of 14 C.F.R. § 121.153(a)(2), which prohibits operating an unairworthy aircraft, and 14 C.F.R. § 91.13(a), which prohibits "operat[ing] an aircraft in a careless or reckless manner so as to endanger the life or property of another."

A. The Alleged Airworthiness Violation. 14 C.F.R. § 121.153(a)(2) provides that no air carrier "may operate an aircraft unless that aircraft . . . is in an airworthy condition and meets the applicable airworthiness requirements of" 14 C.F.R., Ch. I. The definition of an airworthy aircraft is well settled, a two-part test derived from the statutory requirements for the airworthiness certificate now found in 49 U.S.C. § 44704(d): an airplane must conform to the type certificate approved for that model

-3-

aircraft and must be in a condition for safe operation. See 14 C.F.R. § 3.5(a); Copsey v. NTSB, 993 F.2d 736, 738 n.1 (10th Cir. 1993).[2]

The type certificate issued for each aircraft model includes the aircraft's original design specifications and "terms required in the interest of safety," including operating restrictions. 49 U.S.C. § 44704(a)(2)(B); 14 C.F.R. § 21.41. As the CRJ-700 was designed with retractable landing gear, the type design required all landing gear to be operable. If a CRJ-700's landing gear is inoperable, the airplane may not take off *unless* the FAA has issued the carrier an approved special operating protocol known as the Minimum Equipment List ("MEL"), which "constitutes an approved change to the type design." 14 C.F.R. § 121.628(a)(2).[3] In this case, Craig admitted that GoJet had neither used nor complied with the restrictions in an MEL. Cooper testified that the failure to observe MEL restrictions meant the plane "would be flying not in the configuration with the certificate that was issued [by the FAA] for that aircraft," making the plane "unairworthy."

The Administrative Law Judge ("ALJ"), focusing on the second part of the airworthiness definition, found that the risk of landing an overweight airplane when the CRJ-700's flight was aborted established that the airplane was not in a condition for safe operation, and was therefore unairworthy. The Administrator rejected GoJet's administrative appeal on a different ground, concluding that the airplane was

---

[2]49 U.S.C. § 44704 directs the FAA to issue a series of certificates to guarantee the safety of aircraft such as the CRJ-700 operating in this country. The "type certificate" approves its design specifications, the "production certificate" approves production in accordance with the approved design, and an "airworthiness certificate" approves each airplane produced. See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 800-06 (1984).

[3]For example, an MEL may allow an air carrier to defer repairs of an otherwise inoperable airplane until it can be flown to a place where repair is more feasible.

unairworthy because, when flown with inoperable landing gear and without use of an approved MEL, it did not conform to its type certificate.

In its petition for judicial review, citing testimony by Cooper and Craig that a CRJ-700 can be flown safely when gear pins were not removed, GoJet argues that substantial evidence does not support the ALJ's finding that the airplane was not in a condition for safe operation. This issue is not properly before us. We review only the Administrator's final agency action, not portions of the ALJ's decision the Administrator did not consider. See 49 U.S.C. § 46110(a); INS v. Orlando Ventura, 537 U.S. 12, 15 (2002); Simon v. Simmons Foods, Inc., 49 F.3d 386, 389-90 (8th Cir. 1995). The Administrator concluded that GoJet's plane was unairworthy because it did not conform to its type certificate, without reaching the ALJ's alternative ground. If we rejected the Administrator's conclusion, our proper disposition would be to remand for agency consideration of the ALJ's alternative ground, not to address it ourselves. Orlando Ventura, 537 U.S. at 16-18; Erickson v. U.S. Postal Serv., 571 F.3d 1364, 1371-72 (Fed. Cir. 2009). Thus, we do not consider this contention.

The Administrator's ground for concluding that GoJet violated 14 C.F.R. § 121.153(a)(2) is not challenged on appeal. That should be the end of the matter, but in any event we find no plain error on this administrative record. The Administrator's written decision, and the FAA's brief to this court, take the position that *any* type-certificate nonconformity warrants a finding that the air carrier violated 14 C.F.R. § 121.153(a)(2) by operating an unairworthy aircraft. That position finds support in Morton v. Dow, 525 F.2d 1302, 1307 (10th Cir. 1975). But as the record does not reveal all the conditions the FAA might consider type-certificate nonconformities, we neither approve nor reject this interpretation of the regulation. Rather, we conclude that the type-certificate nonconformity in this case -- inoperable landing gear -- was so clearly related to safe operation of the airplane that a finding the airplane was not airworthy was clearly warranted based solely on *this* nonconformity. GoJet's evidence that a CRJ-700 with fixed landing gear *can* be flown in compliance with its

type certificate through the use of approved MEL procedures is irrelevant because those procedures were not used. Accordingly, the Administrator did not err in determining that GoJet violated § 121.153(a)(2). "[A]irworthiness does not mean flyability." Copsey, 993 F.2d at 739.

B. The Alleged Residual Violation. GoJet next argues the Administrator erred in ruling that GoJet carelessly or recklessly operated the aircraft in violation of 14 C.F.R. § 91.13(a). Like the ALJ, the Administrator concluded that careless or reckless operation was a residual violation of GoJet operating an unairworthy aircraft: "Once the agency shows that a respondent has operated an unairworthy aircraft," the Administrator ruled, "a violation of Section 91.13(a), follows as a residual violation, unless extraordinary circumstances are present."[4] We upheld the finding of a § 91.13(a) violation predicated on violations of other regulations in Crawford v. Engen, 823 F.2d 201, 203-04 (8th Cir. 1987). GoJet nonetheless argues that this case presented extraordinary circumstances because the CRJ-700 could be safely flown with fixed landing gear and thus posed no *actual* danger to anyone's life or property.

The Administrator's decision that GoJet failed to establish extraordinary circumstances was not arbitrary or capricious. A violation of § 91.13(a) does not require proof of *actual* danger to lives or property; the potential for danger is enough. See Watkins v. NTSB, 178 F.3d 959, 962 (8th Cir. 1999), and cases cited. At the hearing, FAA Inspector Cooper explained how the operation of a CRJ-700 with inoperable landing gear posed potential danger, including the danger associated with an overweight landing. The Administrator did not err in crediting this testimony and finding that GoJet violated 14 C.F.R. § 91.13(a).

---

[4]The agency imposed no additional civil penalty for the residual violation.

## II.

GoJet argues the FAA erred procedurally when Inspector Cooper unilaterally terminated the VDRP process and the agency commenced civil penalty proceedings. The first question -- not addressed by either party -- is whether the FAA's decision to terminate the VDRP procedure in a particular case is judicially reviewable. The issue is not free from doubt.[5] The VDRP is an FAA policy, not a part of the agency's procedural rules and substantive regulations. Significantly, the policy "pertains to an agency's exercise of its enforcement discretion -- an area in which the courts have traditionally been most reluctant to interfere." Brock v. Cathedral Bluffs Shale Oil Co., 796 F.2d 533, 538 (D.C. Cir. 1986) (Scalia, J.), citing Heckler v. Chaney, 470 U.S. 821 (1985), and other cases. Subject to Equal Protection Clause constraints, a federal agency's decision to commence a civil enforcement action is, like the charging decision of a criminal prosecutor, normally deemed to be unreviewable because it is an action "committed to agency discretion by law," 5 U.S.C. § 701(a)(2).

This narrow "presumption of unreviewability" does not apply if "Congress has provided us with 'law to apply,'" Heckler, 470 U.S. at 834, or if the agency has made clear its intent that a policy statement or set of enforcement guidelines impose binding limitations on the exercise of its enforcement discretion. Compare South Dakota v. Ubbelohde, 330 F.3d 1014, 1028-29 (8th Cir. 2003) (Corps of Engineers Master Manual is a binding policy statement), cert. denied, 541 U.S. 987 (2004), with Sec'y of Labor v. Twentymile Coal Co., 456 F.3d 151, 158-59 (D.C. Cir. 2006) (Mine Act enforcement guidelines are not binding norms limiting agency discretion), and Cathedral Bluffs, 796 F.2d at 537-38 (same). In applying this standard, it is relevant whether the agency policy or procedural rule at issue is "intended primarily to confer

---

[5]For an example of the potential complexity of such procedural issues, see Ass'n of Irritated Residents v. EPA, 494 F.3d 1027 (D.C. Cir. 2007).

important procedural benefits upon individuals in the face of otherwise unfettered discretion." Rochling, 725 F.3d at 939 (quotation omitted).

Here, the stated purpose of the VDRP is to encourage voluntary disclosure and compliance by advising certificate holders of circumstances in which the FAA will refrain from commencing civil penalty actions. The VDRP prescribes how the agency "will" proceed if it accepts a certificate holder's initial notice of apparent violation, language that implies the Program is intended to be binding. Ubbelohde, 330 F.3d at 1028. And the fact that the Administrator considered the merits of GoJet's procedural defense in this case, rather than rejecting it because the decision to commence a civil penalty proceeding is an unreviewable exercise of enforcement discretion, is further evidence the VDRP is meant to limit that discretion. In these circumstances, we conclude the agency has provided us with sufficient "law to apply," that is, the FAA has made clear its intent that, when it accepts a certificate holder's notice of voluntary disclosure, the VDRP Program imposes binding limitations on how the agency will thereafter exercise its enforcement discretion. Therefore, the Administrative Procedure Act's presumption that agency actions are subject to judicial review applies, and we turn to the merits of GoJet's procedural defense. See 5 U.S.C. § 702; Ubbelohde, 330 F.3d at 1027. As the VDRP is a policy prescribing the agency's procedures, not its substantive standards for enforcing the regulations at issue, our review is for abuse of discretion, deferentially bearing in mind that "administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 543 (1978) (quotation omitted); cf. Oberstar v. FDIC, 987 F.2d 494, 504 (8th Cir. 1993).

GoJet argues (as it did to the Administrator) that after rejecting a proposed comprehensive fix GoJet reasonably believed would resolve violations it voluntarily disclosed, Inspector Cooper unilaterally terminated the VDRP process and initiated

this enforcement action, arbitrarily denying GoJet an opportunity to pursue a discretionary administrative appeal the VDRP expressly authorizes:

> When disputes occur regarding the acceptance of a proposed comprehensive fix . . . the principal inspector and the pertinent regulated entity may request that the issue be resolved at the next level of management within the FAA. This procedure will provide for an independent assessment of the areas in disagreement.

Order 8900.1 at ¶ 11-12; AC 00-58A at ¶ 13.

The hearing record reflects that GoJet's proposed comprehensive fix was simply to counsel the mechanic who had made inadvertent errors. By letter dated January 25, 2008, to GoJet's chief operating officer, Inspector Cooper responded that GoJet's proposal-

> does not preclude recurrence of this violation. The mechanic involved knew of the [General Maintenance Manual] requirement to make a logbook entry stating the landing gear pin was installed prior to this incident, and yet still forgot to make the entry. . . . The comprehensive fix should prevent the same mechanic, or any other mechanic, from forgetting to make the logbook entry and subsequently forgetting to remove the gear pins following maintenance.

The letter advised GoJet that "[f]ailure to provide a comprehensive fix acceptable to this office by the close of business on February 8, 2008 will result in the self-disclosures being closed out of the web based VDRP system and processed as enforcement[]."[6] Cooper testified that he suggested to Craig that a pin-removal checklist be added to the manual mechanics consult during brake replacements.

---

[6]The administrative record conclusively refutes GoJet's assertion that Inspector Cooper unilaterally terminated the VDRP process -- his January 25 letter was reviewed by two supervisors.

Unwilling to adopt this suggestion, GoJet offered no alternative for the FAA to consider, and made no attempt to seek review of the comprehensive fix dispute at the next level of FAA management.

In rejecting GoJet's procedural defense, the Administrator noted the VDRP expressly provides that a proposed comprehensive fix must be "satisfactory to the FAA," and must be "satisfactorily implemented and completed," before the FAA will close a VDRP case with no enforcement action. Order 8900.1 at ¶¶ 11-4(C), 11-11; AC 00-58A at ¶¶ 4(c), 12.[7] The Administrator rejected GoJet's contention that Cooper did not permit GoJet to elevate its comprehensive fix dispute to the next level of FAA management because Cooper's January 25, 2008, letter gave GoJet an opportunity to elevate the dispute, but GoJet failed to ask Cooper or his supervisor for review at the next level. We agree.

Cooper's letter clearly stated his position and gave GoJet a deadline to submit a satisfactory comprehensive fix or face enforcement action. When GoJet elected not to accept Cooper's suggested comprehensive fix, it knew the negotiations were deadlocked and the time to seek elevation of the dispute was at hand. Once Cooper's deadline passed, the VDRP did not require further notice to GoJet before the FAA commenced a civil penalty action. GoJet simply failed to pursue the VDRP's informal review procedure. In these circumstances, deferentially reviewing the FAA's adherence to VDRP procedures, we find no basis to conclude that the agency abused

---

[7]It is hardly surprising that a policy declaring when the FAA will not exercise its statutory discretion to commence enforcement proceedings requires that an informal resolution of the disclosed violations be to the agency's satisfaction.

its discretion in terminating this VDRP self-disclosure proceeding and commencing a civil penalty action.

For the foregoing reasons, we deny the petition for review.

_____